IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| FRANK SCHMALZ, <br><br> Plaintiff, <br><br> v. <br><br> VILLAGE OF NORTH RIVERSIDE, et al., <br><br> Defendants. | Case No. 1:13-cv-8012 <br><br> Judge Charles R. Norgle |

## OPINION AND ORDER

Plaintiff Frank Schmalz ("Plaintiff") filed this action in 2013 against the Village of North Riverside and a number of individual defendants[1] (collectively, "Defendants") alleging violations of 42 U.S.C. § 1983, defamation, and seeking a mandamus order that the Village comply with a local ordinance. Plaintiff was the head of his police union and a veteran police officer for the Village. This case, which has now been before several judges in this district before being re-assigned this Court in June 2019 (Dkt. 331), stems from Plaintiff's support for an opponent to the ultimately prevailing mayoral candidate in the Village of North Riverside in 2012 and 2013. For the following reasons, Defendants' for summary judgment is denied except as to the mandamus claim, which Plaintiff has conceded as moot.

Briefly, Plaintiff contends that he made certain public statements opposing the election of the to-be mayor and that, after the election of that mayor (rather than the candidate Plaintiff supported), Plaintiff was taken off of a coveted task force in the department and denied the

---

[1] Individual Defendants, Lane Niemann and Ken Krochmal are the former Police Chief and former Mayor of the Village of North Riverside, respectively. Defendant Hugh Hermanek is the current Mayor of Village of North Riverside and served as a village trustee before becoming Mayor.

1

opportunity of "light duty" work. Now moving for summary judgment, Defendants contend, in part and in conjunction with various legal arguments: (1) that Plaintiff has not provided evidence he engaged in protected speech, and (2) that Plaintiff's removal from the task force and the denial of light duty work was the result of on-the-job injuries that Plaintiff suffered which made him unable to perform the required duties of that task force and led to Plaintiff "self limiting" his own work.

Having reviewed the factual record submitted and the accompanying briefing, Defendants' motion for summary judgment is denied as to the federal claims because material facts relating to each claim are clearly in dispute. Because Plaintiff has conceded that the mandamus claim is now moot and because any issue of back pay can be dealt with in relation to the potential Section 1983 damages, summary judgment is granted as to the mandamus claim.

## I. BACKGROUND[2]

Although certain material facts are in dispute, the parties do present largely consistent stories with respect to the broad background leading to this lawsuit. This Order will note where facts are in dispute.

Plaintiff Frank Schmalz was a police officer employed by the Village of North Riverside Police Department starting in 1985. Twenty-five years later, he was promoted to the rank of Sergeant in July 2010. On February 15, 2013, Plaintiff injured his left knee and left hand in a car

---

[2] The following undisputed facts were taken from the parties' Local Rule 56.1 statements, including: Defendant's Statement of Material Facts ("Def.'s SOMF"); Plaintiff's Response to Defendant's Statement of Material Facts ("Pl.'s Resp. to Def.'s SOMF"); Plaintiff's Statement of Additional Facts ("Pl.'s SOAF"); and Defendant's Response to Plaintiff's Statement of Additional Facts ("Def.'s Resp. to Pl.'s SOAF"). The Court notes that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. L.R. 56.1(b)(3)(C); Banks v. Dart, No. 12 C 4333, 2014 WL 625865, at *2 (N.D. Ill. Feb. 18, 2014).

2

accident working on an assignment for the West Suburban Enhanced Drug & Gang Enforcement taskforce ("WEDGE"). WEDGE is made up of the western collared suburbs of Cook County to organize officers from different departments to fight gang violence and the spread of illegal drugs. As part of WEDGE, North Riverside officers are eligible to earn overtime pay (whereas they otherwise would not be according to the parties), and it is undisputed that being part of WEDGE was viewed as a prestigious and sought-after assignment among officers.

In the time leading up to North Riverside's April 9, 2013 election for mayor, tensions arose between two parties that were putting up candidates for mayor. Plaintiff supported the Transparency and Accountability in Politics party ("TAP") and its mayoral candidate Rocco DeSantis. DeSantis was running against the candidate for the Voters Improvement Party ("VIP"), Hugh Hermanek. During this time, Plaintiff was the president of the North Riverside Policeman Benevolent & Protective Association, the president of the North Riverside Fraternal Order of Police Lodge #110, president of the North Riverside Illinois Policeman's Association and also served as the lead negotiator for the North Riverside Fraternal Order of Police Labor Council. Plaintiff advocated that police union endorse TAP candidate DeSantis in the election, including by distributing political literature in support of TAP, speaking publicly at FOP meetings in October 2012 and January 2013, and going door-to-door. Ultimately the FOP did endorse the TAP candidate DeSantis. Plaintiff stated in his deposition that he supported the TAP party, in part, because he was unhappy with the way certain administrators were running the police department and the village, which he stated was not for the benefit of the department and its efficient function. Defendants do not dispute that if the TAP party candidate DeSantis won the election, DeSantis would have appointed Plaintiff as police chief. The opinions of litigants as to what a losing

3

candidate would have done is of less value, if any, than the assertion of the loser personally if only he had won.

Tensions appear to have escalated on the day of the April 9, 2013 election. Plaintiff was present at the polling place greeting voters, encouraging them to vote for TAP candidates, and informing voters of the union support for TAP. It is disputed whether Plaintiff was wearing his badge and gun, but undisputed that Plaintiff identified himself as the president of the police union as he spoke with people that day. In any event, Plaintiff alleges that while he was at the polling place, Ken Krochmal, former mayor and a supporter of the VIP party, profanely and publicly stated that he knew that Plaintiff, while he was working, would take his 12-year-old girlfriends to a forest preserve and have sex with them.[3] How all of this may have interfered with voting is not addressed by the parties.

Hermanek won the election for mayor. After the election, Hermanek made Deputy Police Chief Lane Niemann the new police chief. He demoted former Police Chief Tony Garvey to commander, and made Sergeant Debby Garcia[4] deputy police chief. With respect to Plaintiff, on April 22, 2013, he was removed from the WEDGE task force. On June 11, 2013, Garvey committed suicide, opening a lieutenant position in the department (commander and lieutenant are interchangeable in this context and for purposes of this opinion). Plaintiff claims that he was the only member of the department qualified, by virtue of a municipal ordinance and the collective bargaining agreement, to be elevated to lieutenant, a point detailed in previous Court orders, e.g. Dkt. 70 at 5, 8. Rather than Plaintiff, however, someone else was promoted to Garvey's vacant position.

---

[3] This alleged statement serves as the basis for Plaintiff's defamation claim.
[4] Defendants note that Garcia, like Plaintiff, was a member of the TAP party.

4

Turning back to the April 22, 2013 decision to remove Plaintiff from the WEDGE task force, the facts presented by the parties are muddled[5] and contested. Plaintiff states that despite his accident on July 26, 2013, he was cleared by a doctor to fully perform the necessary WEDGE duties (which all parties agree included physically taxing activities) on February 26, 2013 and March 19, 2013. Plaintiff states he provided those letters to the relevant Defendants. Defendants, on the other hand, claim that Plaintiff was too injured to perform his duties and that Plaintiff "self-limited" his workload. Plaintiff missed work on April 17, 2013 completely, and partially on May 14, May 16, May 21, and May 23, 2013 to attend physician and therapy appointments for his left knee injury. A nurse case manager was assigned to Plaintiff on May 24, 2013. On June 27, 2013 Plaintiff was indicated for arthroscopic knee surgery. On June 27, the case manager, according to Defendants (and disputed by Plaintiff) recommended or made a report of Plaintiff's diagnosis and alleged pain, and the village finance director instructed Chief Niemann to send Plaintiff home from work on June 28, 2013 with salary and benefits continuing. Plaintiff had a total knee replacement on December 8, 2014. On June 3, 2015, Plaintiff submitted a full duty disability application for ongoing and permanent work-related disability, and on August 8, 2015, he was evaluated and it was determined in the disability process that he would not be able to return to work to perform the functions of a full-duty police officer. On June 1, 2016, after 31 years on the force, Plaintiff was granted a full disability pension after testifying—testimony which included discussion of Plaintiff's work injuries dating back to 2012 along with what appears from the record to be a subsequently-developed or discovered brain tumor.

---

[5] Neither party has presented their statement of undisputed facts chronologically (which itself is not improper, though it is not helpful given the nature of this dispute), and each side has improperly responded to the other's "undisputed" facts with lengthy, argumentative responses that muddy the background considerably. In the interest of moving this seven-year-old litigation forward, however, the Court overlooks any failure in this respect.

Plaintiff continued to receive a salary after he was sent home on June 28, 2013 via payments from the Village under Public Employee Disability, temporary total disability payments, and worker compensation payments.

This case was filed in 2013 and has now been before three District Court judges and then-Magistrate Judge Rowland. Notably and finally with respect to background, Judge Bucklo entered a minute order, Dkt. 290, holding the following with respect to missing text messages sent in 2013 (which may have related to the personnel decision to remove Plaintiff from the WEDGE task force):

> The argument that defendants' testimony about what they said in admittedly relevant text messages in 2013 concerning plaintiff can reasonably take the place of the messages, and that therefore plaintiff is not prejudiced by their destruction, is frivolous. In addition, I conclude that given the notices that defendants received to preserve evidence, and their undoubted understanding and knowledge of the importance of the orders to preserve the evidence, their subsequent destruction of the cell phones (in one case years after this case began) is sufficient to show bad faith. At the very least, Judge Rowland's recommendation that the parties be allowed to present evidence on the matter to a jury is appropriate. I will consider further closer to trial whether the jury should be instructed on an adverse inference.

Dkt. 290. Specifically, this Court likewise will reserve ruling on the import of these lost text messages but notes this previous order and an issue regarding the potential destruction of relevant evidence for the record.

## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R.

6

Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The Court must view "the record in the light most favorable to the nonmovant and [avoid] the temptation to decide which party's version of the facts is more likely true." Id. Finally, "to survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of its case." Lewis v. CITGO Petroleum Corp., 561 F.3d 698, 702 (7th Cir. 2009).

### B. Plaintiff's Section 1983 Retaliation Claims

Defendants argue they are entitled to summary judgment with respect to Plaintiff's Section 1983 claims[6] because (1) he has presented no evidence that he engaged in protected speech, (2) because his removal from the WEDGE taskforce was not an actionable deprivation, and (3) because the undisputed evidence in the record shows that any actions taken with respect to Plaintiff's employment were the result of well-documented injuries.

The Court will address these three arguments in turn. First, with respect to the nature of Plaintiff's speech, Defendants argue that Plaintiff did not participate in protected speech. A First Amendment retaliation claim requires that a plaintiff's speech be constitutionally protected—that is, the public employee must speak as a citizen on a matter of public concern. Garcetti v. Ceballos,

---

[6] Plaintiff's Amended Complaint alleges two distinct Section 1983 claims but the allegations appear to be largely duplicative within each. Each can be dealt with for purposes of summary judgment with the above analysis given that disputed facts relate to each.

7

547 U.S. 410, 421, 126 S. Ct. 1951, 1959, 164 L. Ed. 2d 689 (2006); Milwaukee Deputy Sheriff's Ass'n v. Clarke, 574 F.3d 370, 376 (7th Cir. 2009) ("Clarke"); Gunville v. Walker, 583 F.3d 979, 983 (7th Cir. 2012). A public employee's speech may not meet this requirement if the speech was made pursuant to their official duties. Spiegla v. Hull, 481 F.3d 961, 965 (7th Cir. 2007). Moreover, where a public employee's speech arises out of a personal motive or dispute from within the government, that speech may fall out of the realm of protection, even if it relates to a public figure. E.g. Kristofek v. Vill. of Orland Hills, 832 F.3d 785, 793 (7th Cir. 2016); Clarke, 574 F.3d at 377.

In the present case, Plaintiff has presented testimony that, in part, the statements he made in support of the TAP party and its candidate DeSantis were motivated by the desire for the North Riverside Police Department to operate more efficiently. The efficient operation of a police department no doubt constitutes a matter of public concern. Moreover, Plaintiff's speech was linked directly to an election which, in his view, could result in new city management that would in turn lead to more efficient management of the police department. The fact that Plaintiff apparently stood to personally gain by potentially being promoted to the chief position does not negate the nature of his speech in this instance. This speech was clearly protected expression under the First Amendment. Chaklos v. Stevens, 560 F.3d 705, 712 (7th Cir. 2009); Kristofek, 832 F.3d at 795.

Next, Defendants argue that Plaintiff's removal from the WEDGE task force does not constitute an actionable deprivation for purposes of the First Amendment. This argument fails for two reasons. First, Plaintiff's claim is based not solely on his removal from WEDGE, but also on what he argues was an improper denial by the department of limited duty work. In any event, the removal from WEDGE, which is described in the record as being a prestigious position which also

8

qualified Plaintiff for otherwise unavailable overtime pay, does constitute an actionable deprivation. The test under a Section 1983 First Amendment retaliation claim is less demanding than that of a Title VII adverse employment action claim. Hobgood v. Ill Gaming Bd., 731 F.3d 635, 643 (7th Cir. 2013); Gustafson v. Jones, 117 F.3d 1015, 1021 (7th Cir. 1997).

Because the removal from WEDGE, a prestigious position that also provided the opportunity to earn overtime pay, is the type of action that could tend to deter free speech, this alone constitutes a sufficient deprivation for First Amendment purposes and Defendants' motion for summary judgment must be denied on this issue as well.

Third, Defendants argue that the undisputed evidence in this case shows that Plaintiff was not promoted to Commander, removed from WEDGE, and ultimately sent home from work on June 28, 2013 because of the injuries that he had previously suffered, which rendered him unable to carry out the duties of a police officer, citing McGreal v. Vill. of Orland Park, 850 F.3d 308, 313 (7th Cir. 2017) (The employer can meet its burden by offering an alternative explanation for the firing, showing that its decision to terminate the plaintiff "would have been made in the absence of the protected speech.").

Summary judgment is precluded on this issue because of the existence of disputed material facts relating directly to this issue. As noted above, Plaintiff has claimed that he submitted two doctors' notes from February 26, 2013 and March 19, 2013 clearing him for fully duty. This fact rises to the level of creating a genuine dispute about Plaintiff's ability to perform his job, particularly given that at this juncture of the litigation all factual inferences must be drawn in the favor of the nonmovant (Plaintiff). Although Defendants no doubt present evidence on this point, the Court must not step into the position of the factfinder at summary judgment.

On this issue, Defendants also argue that Plaintiff should be judicially estopped from claiming that he was not disabled because of statements he made in the disability hearings in 2015. The Court disagrees. Plaintiff's statements at those hearings, two years after the operative decisions were made, do not necessarily indicate that Plaintiff was in fact disabled (or unable to carry out his duties) at the times the 2013 decisions were made. Indeed, at the time the disability finding was made in 2015, new infirmities appear to have arisen for Plaintiff (including the development or discovery of a brain tumor) and it is a matter of common sense that Plaintiff's injuries could have potentially worsened in 2014. It certainly is possible that at the operative times that the decisions allegedly taken in retaliation against Plaintiff that he was physically in better shape than during 2015. The Court will thus not apply the doctrine of judicial estoppel, as it is not clear from the record that Plaintiff indeed did take contradicting positions in two proceedings. Thus, summary judgment would be improper on this issue given these disputes of material fact.

Generally, in reaching this decision and in deciding a motion for summary judgment, the Court is disciplined by the law to avoid deciding the facts and to leave to the province of the jury the determination of the genuine issues of material fact based upon the totality of the evidence, as to which they, not the Court, determine credibility and weight. Because the federal claims will survive summary judgment, the arguments related to the relinquishment of jurisdiction over the defamation claim are moot and this claim will likewise move forward.

### III. CONCLUSION

Consistent with the above, summary judgment is granted in favor of Defendants as to Plaintiff's mandamus claim. In all other respects, the motion is denied.

IT IS SO ORDERED.

ENTER: _/s/ Charles R. Norgle/_
CHARLES RONALD NORGLE, Judge
United States District Court

August 4, 2020